On the third of September, 1801, Shute made an entry of 640 acres of land, on a warrant for 1,280 acres, No. 159, south-west corner of Lardner Clarke's tract that joins Fletcher, south with his line, then west for complement. Clarke's bounds are south from the corner and east. The land claimed by Shute lay to the south as far as M'Murry's tract, and to the west so far as to include the spring on Turkey Creek, also called for in the entry. Fletcher's tract lay to the north, Mayfield's on the west, Lardner Clarke's other tract on the south and west, and M'Murry's tract on the south. Vacant lands were on the east.
Buchanon, a deputy surveyor, was called on by Shute to certify how much of his entry was taken by interference of the adjoining claims; who on the *Page 207 
8th of April, 1803, certified 403 acres lost by Mayfield's and Clarke's claims, No. 88, which, for distinction sake, may be called Clarke's other tract. On the 9th of April, 1803, Shute entered 403 acres of this warrant, 159 on other lands, which rendered it impossible to begin at the place called for, and to survey the balance of the entry so as to include that part of it which adjoined M'Murry. This part, to the amount of 47 acres, Buchanon entered on the 11th of April, 1803. The deficiency was not 403 acres, and not more than 310 acres and 85 poles. The part not lost, 329 acres and 75 poles, if it were lawful to extend the survey as far as M'Murry's boundary, which was 9 poles further than would be reached by beginning at the corner called for and extending south twice as long as broad. Buchanon says the entry did not cover the lands the claims, and that the calls thereof are contradictory and insensible, and cover no lands at all. He relies also on the act of limitations of three years. In 1807, Shute entered 960 acres of this warrant, 159 on other lands. And Shute, in 1807, also, as is said, entered the lands now in controversy. He sold in the same year to Blakely, who says that he, Blakely, spoke to Buchanon concerning the title after the purchase, and was informed by Buchanon that he had an entry upon it, but that Shute's title might be the best. He does not say that Buchanon promised to remove his warrant or withdraw his entry in favor of Shute's claim. The questions for the decision of the Court are, first, could Shute's entry be surveyed so as to include the lands entered by Buchanon? Secondly, whether Shute was compelled to abandon it by Buchanon's certificate? Thirdly, whether the injury sustained will authorize the Court to vest Buchanan's title in Shute? First, the survey can not be made south from the beginning and be bounded at the same time by Clarke's line; to pursue that from the corner would be north, and the next line west would run into *Page 208 
Fletcher's land, mentioned in the entry; that can not be the meaning of the entry. Should the survey go east from the corner with Clarke's line, then the next course being west would return directly to the beginning. That can not be the meaning of the entry. Reject the words with hisline, and the entry will call to run south and west and that will take in the spring on Turkey Creek The land must be so surveyed as to lie south of the beginning. On the west are Mayfield's and Clarke's other tract, leaving not more than 329 acres or thereabouts between the first line running south and these claims. The surveyor must then go south and west till impeded by old claims. This will carry the survey to M'Murry's tract. He must next search for vacant lands adjoining, and run to the east for complement; 1777, c. 1, sec. 10. Ker and Porter, decided in the late Superior Court for Mero district. Buchanon was called on to certify how much was taken by interfering claims, not saying anything of the vacant lands. He certified more lost by them than was, leaving so much only for the balance as will not extend to the lands in question. That part of the entry, then, was in fact certified not to be within it, when it legally was. Secondly, this certificate has a very different effect from a plat and certificate of survey, returned to the office as the foundation of a grant; for after it is made, the party for whose benefit it is made may either use it or not, at his pleasure. He may, notwithstanding this certificate, proceed to survey his entry; including all the land legally within it, or which is vacant and not claimed by other conflicting entries, and procure a grant for the same. Shute ought to have done so. He ought to know the law upon this subject. Every man is bound to know what the law is, so far as it relates to the business he is about. He can not say. I depended upon the opinion of such a man, and he gave me a wrong opinion, and I have suffered by it. Any lawyer in the county could have told Shute *Page 209 
that this land, now in controversy, was within his entry. It is hardly to be presumed that in fact it was unknown to any man conversant in the bnsiness of taking up vacant lands, as every one is presumed to be who takes them up. 1796, c. 9; 1800, c. 14; 1801, c. 3, sec. 4. It would seem to follow that he can not subject Buchanon for his own mistake, if indeed it were one. But what remedy could be applied by the Court if Buchanon actually did impose upon him? Shute has appropriated other lands to the amount of the deficiency certified. Must he keep these, and have Buchanon's also? It may be that these lands are better than the lands removed from. It would seem so from the circumstance of his removing, in 1807, the whole residue of the warrant to other lands. If any relief could be given at all, it would be by making them exchange lands; he taking Buchanon's and Buchanon taking his, which, he says, he was obliged to remove to; otherwise, all that could be done by way of relief would be to give the difference in value between the two tracts. Here, however, it does not seem that Buchanon has done anything more than he might legally do. Shute removed; Buchanon immediately occupies part of the same ground. All the complaint that the law will listen to is, that he was purposely misled and deceived by Buchanon, and suffered a loss by it. True it is, Buchanon has profited by the vacancy. The removal is not imputable to him, however, but to the choice of Shute. If any damage has been sustained, it does not appear. Any remedy the law might afford should be proportioned to, but not exceeding, the measure of the mischief. The Court will not decree a conveyance of Buchanon's land to Shute. As to the act of limitations it need not now be discussed.